

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-26-00009-CR

---

LOU MOORE, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 202nd District Court
Bowie County, Texas
Trial Court No. 23F1027-202

---

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

## MEMORANDUM OPINION

A Bowie County jury convicted Lou Edward Moore of sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.011(a)(2). After Moore pled true to the State's punishment-enhancement allegation, the trial court sentenced him to life imprisonment. On appeal, Moore argues that the evidence is insufficient to support the jury's verdict of guilt. Because we find that legally sufficient evidence supported the jury's verdict of guilt, we affirm the trial court's judgment.

## I.        Legally Sufficient Evidence Supports the Jury's Verdict of Guilt

In his sole point of error on appeal, Moore argues that the evidence was legally insufficient to show that he had sex with Jessica[1] before her seventeenth birthday while in Bowie County, Texas. The amended indictment alleged that "beginning on or about May 1, 2002, and continuing until on or about June 13, 2002," Moore "intentionally or knowingly cause[d] the penetration of the sexual organ of Jessica Thompson (a pseudonym) . . . by [Moore's] sexual organ" when Jessica was a child under the age of seventeen and that Jessica "was then and there a person with whom [Moore] was prohibited from engaging in sexual intercourse or deviate sexual intercourse" with. As applied to this case, a person commits an offense of sexual assault if the person causes the penetration of the female sexual organ of a child by any means. *See* Act of May 26, 1997, 75th Leg., R.S., ch. 1286, § 1, 1997 Tex. Gen Laws 4911, 4911 (amended 2003, 2017) (current version at TEX. PENAL CODE § 22.011(a)(2)(A)). Here, "'[c]hild' means a person younger than [seventeen] years of age." TEX. PENAL CODE ANN. § 22.011(c)(1).

---

[1]We use pseudonyms to protect the identity of any person who was a minor at the time of the offense. *See* TEX. R. APP. P. 9.10.

### A.    Standard of Review

"The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence." *Braughton v. State*, 569 S.W.3d 592, 607 (Tex. Crim. App. 2018) (citing *Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979); *Brooks v. State*, 323 S.W.3d 893, 917 (Tex. Crim. App. 2010) (Cochran, J., concurring)). "In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks*, 323 S.W.3d at 912). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 319)) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

"In our review, we consider 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13). "It is not required that each fact 'point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13). "Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by

3

circumstantial evidence alone." *Id.* (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13). "Even erroneously admitted evidence must be considered when addressing a challenge to the sufficiency of the evidence." *Moore v. State*, 169 S.W.3d 467, 477 (Tex. App.—Texarkana 2005, pet. ref'd); *see Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Williamson*, 589 S.W.3d at 298 (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). The offense here was sexual assault of a child, which meant that the prosecution had the burden of proving the following essential elements: (1) Moore intentionally or knowingly caused the penetration of Jessica's sexual organ, and (2) Jessica was younger than seventeen years of age at the time of the penetration. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A), (c)(1).

### B.     The Evidence at Trial

At trial, the State called Jessica as its first witness. At the time of trial, Jessica was forty years old, married, and had three children. Jessica grew up in Arizona, where she lived with her mother and stepfather. When Jessica was fifteen, she reached out to Moore, who lived in Fouke, Arkansas. Jessica began corresponding with Moore. When her mother found out, Jessica and her mother got into an argument. Jessica told her mother that she wanted to go live with Moore in Fouke. Shortly thereafter, Jessica moved to Fouke to live with Moore. Jessica explained that she was still fifteen when she moved to Arkansas.

4

According to her testimony, about two weeks after arriving in Fouke, Jessica was watching a movie with Moore one night in the living room of their home. Moore put his hand on her thigh and then moved his hand to her crotch area. Moore then put his hand under her clothes. Jessica said that "all the sudden [she] was laying down, and he was on top of [her] and inside of [her]." She stated that Moore used no protection and ejaculated inside of her. Jessica testified that Moore told her not "to worry about getting pregnant because he had a vasectomy." At that point, Jessica had never had any sexual intercourse with anyone else.

Jessica testified that the sexual abuse became a regular occurrence, explaining that it happened "[a]bout three times a week." She said that it always included touching, penetration, and sometimes oral sex.

Jessica testified that when she was sixteen, she moved with Moore from Fouke to Mesa, Arizona. The sexual abuse continued while she lived in Mesa. From Mesa, they moved back to Fouke for a short time and lived with her grandparents. Then, in May of 2002, Jessica explained that they moved to a house in Texarkana, Texas, which is in Bowie County, Texas. Moore rented a house on 9th Street in Texarkana. Utility records admitted into evidence reflect that the water to the home was activated on May 31, 2002. Jessica testified that she was sixteen years old and a junior in high school when they moved into the house on 9th Street, before her seventeenth birthday in mid-June 2002.

Jessica testified that Moore sexually abused her when she was sixteen years old in Moore's bedroom of the house in Texarkana. Jessica recalled "being on [Moore's] bed and

5

being raped." On that occasion, she said that Moore penetrated her female-sexual organ with his penis.

Jessica also explained that the last time Moore sexually abused her before she turned seventeen was a few days before her birthday. She stated that Moore told her that he would no longer face charges once she turned seventeen in Texas. She recalled, like the many other times in the past, just lying there while he had sex with her.

After she turned seventeen in June, Jessica explained that the sexual abuse continued "pretty much the same, about three times a week." However, around the third week of June, Moore was involved in a car accident, was charged with driving under the influence, and went to jail. Jessica was with Moore when the wreck occurred. After the accident, Moore was away from home for a couple of weeks. During the month of July, Jessica stated that she noticed her body started to change and she suspected that she was pregnant. Jessica testified that between the time of the wreck and the time Moore was released from jail, she did have sexual contact with someone else.

Jessica ultimately realized she was pregnant. She testified that when Moore was released from jail, he realized that she was no longer using her menstrual products and told her she needed to get an abortion. Jessica stated that Moore took her to an abortion clinic in Shreveport, Louisiana. At that point, she was "close to four months pregnant." After talking to someone at the clinic, Jessica decided that she did not want to go through with the abortion. She stated that she made it clear to Moore that she was going to have the child. That strained her relationship with Moore. She explained that times got pretty difficult.

6

Jessica testified that, as a result, in January 2003, she moved to a maternity home in Keller, Texas. She gave birth to her child in March. She stayed at the maternity home until May 2003, when she returned to Arkansas to live with Moore again. She recalled staying with Moore for around one month. During that time frame, she had sexual contact with Moore. She ultimately moved to North Richland Hills, Texas.

She testified that she met her husband in December of 2003 and was married six months later. Jessica stated that her husband treated the child as his own child and helped raise the child. However, she stayed in contact with Moore. Periodically, Moore would visit Jessica and her child.

Jessica testified that in 2020, she went through a child-support enforcement action with the attorney general's office. She was trying to get child support from the person she thought was her child's biological father. However, when they conducted a paternity test, paternity was not established for the person she thought was the child's biological father. At that point, Jessica explained that she knew Moore was the child's father. Shortly thereafter, Jessica returned to Texarkana and filed a police report against Moore.

Cliff Harris, an investigator with the Bowie County District Attorney's Office, testified that he was contacted by his supervisor to secure a search warrant for Moore's DNA. He secured buccal swabs from Moore. Sergeant John Thacker, with the Texarkana, Texas, Police Department, testified that he secured buccal swabs from the child and Jessica. Officer Spencer Price, with the Texarkana, Texas, Police Department, testified that he shipped the swabs to the University of North Texas laboratory.

7

Kendra Felipe-Ortega, a forensic scientist with the University of North Texas Health Center for Human Identification in Fort Worth, testified that she received buccal samples for the child, Jessica, and Moore. She was able to conduct a DNA analysis and develop a genetic profile for each sample. The results of her testing were that Moore could not be excluded as the biological father of the child. Based on the DNA analysis conducted, at least 99.99999998 percent of the male population is excluded as being a possible biological father of the child. As a result, her conclusion was that Moore's DNA profile is consistent with a biological parent/child relationship with the child.

After hearing this evidence, the jury found Moore guilty of sexual assault of a child.

## C. Analysis

According to Moore, the evidence was insufficient to support his conviction because the jury would have been required to speculate whether Jessica and Moore had sexual intercourse in Bowie County, Texas at a time before her seventeenth birthday. Specifically, Moore contends that while the genetic testing proved that he is the father of Jessica's child, the child's "date of birth indicates a date of conception after [Jessica's seventeenth] birthday."

The testimony shows that Jessica moved into a house with Moore on 9th Street in Texarkana, Texas in May of 2002. That was corroborated by utility records which reflect that the water to the home was activated on May 31, 2002. The testimony also shows that Jessica was sixteen years old and a junior in high school when they moved into the house on 9th Street. Jessica testified that Moore sexually abused her when she was sixteen years old in Moore's bedroom of the house in Texarkana. Jessica recalled being on his bed and that Moore penetrated

8

her female-sexual organ with his penis. Jessica also testified as to the last time Moore sexually abused her before she turned seventeen. Jessica said it was a few days before her birthday and that Moore had referenced her upcoming birthday.

Moore argues that because of the child's date of birth, the likely conception date was *after* Jessica turned seventeen, and therefore a reasonable jury could not conclude that Moore had sexual intercourse with Jessica before she was seventeen. However, the jury was not tasked with the determination of whether the child was conceived after Jessica turned seventeen, but rather the jury needed to determine whether Moore sexually assaulted Jessica prior to her turning seventeen, regardless of her pregnancy. This was not a case where only one instance of sexual assault was being alleged; rather, Jessica testified to numerous acts of sexual intercourse with Moore from the time she was fifteen, including during the weeks before her seventeenth birthday while living in Texarkana. As the fact-finders, "the jury was the sole judge of the credibility of the witnesses at trial, and we defer to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts." *Wilson v. State*, 473 S.W.3d 889, 899 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (citing *Jackson*, 443 U.S. at 319).

Viewing all of the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found, beyond a reasonable doubt, that Moore committed sexual assault of a child under the age of seventeen in Bowie County, Texas. As a result, we overrule Moore's sole point of error.

## II.    Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:     July 17, 2026
Date Decided:       July 29, 2026

Do Not Publish